## H. K. MITCHELL ET AL., RESPONDENTS, *v.* M. BROM-BERGER, APPELLANT.

An attorney or counselor cannot, without the consent of his client, be compelled, and has no right, to disclose any fact which may have been communicated to him by his client, solely for the purpose of obtaining his professional assistance or advice ; but this rule is not to be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights.

Whenever, in a suit between the attorney and client, the disclosure of a privileged communication becomes necessary to the protection of the attorney's own rights, he is released from those obligations of secrecy which the law places upon him. He should not, however, disclose more than is necessary for his own protection.

The judgment of an inferior Court will not be set aside on appeal, for errors committed on the trial which it appears could not have prejudiced the appellant.

When a cost bill appears regular on its face, and there is nothing in the record to show error in any of the items charged, the refusal of the Court below to retax the costs must be presumed to be correct.

APPEAL from the District Court of the First Judicial District, Hon. RICHARD RISING presiding.

*Perley & DeLong,* for Appellant.

*First.*—The Court below erred in allowing Mr. Mitchell, one of the respondents, who was a witness in the cause, to testify as to communications made to him during the transaction of the business out of which this suit has grown.

It is not denied that a witness under such circumstances may state generally the description of the business which was done—as, for instance, that he drew a confession of judgment, filed an answer,

and that there were various consultations, and the amount of money or property involved.

This is necessary in order to enable the Court to arrive at any conclusion as to the value of the services rendered, or the responsibility assumed by the attorney. This is the rule laid down by the Court below, but departed from, as will appear hereafter, in the direct rulings of the Court upon the testimony.

The rule of law in regard to what are known as " privileged communications " is so well known to this Court that we do not feel at liberty to make any extended citations of authority; but we will call the attention of the Court to the rule as laid down in some of the books, and as it is established in the United States. In Greenleaf's Ev. Vol. 1, page 329, § 237, the rule is thus stated, as laid down by Lord Brougham : " This rule is not qualified by any reference to proceedings pending or in contemplation. If touching matters that come within the ordinary scope of professional employment they receive a communication in their professional capacity, either from a client or on his account, and for his benefit in the transaction of his business, or which amounts to the same thing, if they commit to paper in the course of their employment on his behalf matters which they know only through their professional relation to the client, they are not only justified in withholding such matters, *but bound to withhold them*, and will not be compelled to disclose the information, or produce the papers in any Court of law or equity either as party or as witness."

Again, page 332, Sec. 240 : " This protection extends to every communication which the client makes to his legal adviser for the purpose of professional advice or aid upon the subject of his rights and liabilities."

On pages 329–330 and 331 the reason of the rule is discussed, the same being based upon public policy, and the protection it affords being treated as essential to the administration of justice. (See also *Hatton* v. *Robinson*, 14 Pick. 422; *Barnes* v. *Harris*, 7 Cush. 576; *Hager* v. *Shindler*, Sup. Court, Cal. October term, 1865; same case on re-hearing, Sup. Court, Cal. July term, 1866, reported in Vol. 29, page 47.) The statutory provision of this State affirms the same rule. (Stat. 1861, p. 374, § 344.)

*Second.*—Having shown, as we respectfully submit, that the tes-

timony referred to was not admissible, we will endeavor to show not only that it was of such a character that it might have influenced the verdict of the jury, which is sufficient to entitle the appellant to a new trial, but that it had a direct tendency towards such an influence. It is not so much to any isolated fact that we refer for our purpose, as to the general scope and tendency of the testimony.

It presented Bromberger in this light before the jury: being insolvent and knowing this fact, he wished to give preference to his brother and to Armer, his intimate friend, by confessing judgment to them to the exclusion of his San Francisco creditors. No one can say how many inferences might have been added by the jury. To them it might have seemed that this brother and Armer were selected to obtain this confession, (considering the relation between the parties) merely to cover up the property in the store, and that there was no actual indebtedness existing upon which to found the confession of judgment. Others might have regarded it wrong thus to exclude the San Francisco creditors. The same may be said with reference to the transaction with Paxton & Thornburgh.

All these disclosures had a tendency to place the appellant in a most unfavorable light before the Court and jury. And in this connection we refer to the difference in the amount of the verdict, and the amount of the bill presented by Bromberger, though no additional service had been rendered after the presentation of the bill.

One of the grounds upon which this motion is based is, that the verdict was rendered under the influence of passion and prejudice, which we think may be fairly inferred from the last circumstance mentioned, and the nature of the testimony admitted. For the rule on this subject, see *Santillan* v. *Moses,* 1 Cal. 93; *Mateer* v. *Brown,* 1 Cal. 221; *Innis* v. *Steamer Senator,* 1 Cal. 462; *Farmers & Manuf. Bank* v. *Whinfield,* 24 Wend. 419; *Winkley* v. *Foye,* 8 Foster N. H. 513; *Winkley* v. *Foye,* 33 New Hamp. Rep. 171.

*Mitchell & Hundley,* in *pro per.*

Opinion by LEWIS, C. J., full Bench concurring.

The plaintiffs, who are practicing lawyers in Virginia City, bring

this action to recover the sum of one thousand and thirty-seven dol
lars, which it is claimed is due them from the defendant for profes-
sional services rendered by them some time during the year 1865.
The defendant puts in issue all the material allegations of the com-
plaint by denying the indebtedness; denying that he ever employed
the plaintiffs, or either of them, as his attorneys or counselors, or
in any other capacity; and that they, or either of them, have ever
acted as his attorneys or counselors, or done or performed any labor
of any character whatever for him.   Upon the trial the plaintiff
Mitchell testified on his own behalf, and stated fully the manner in
which he and his partner were employed by the defendant; detailed
all the services rendered by them, and also stated the counsel which
they gave the defendant in the matter in which they were employed.

The defendant objected to and moved to strike out a large por-
tion of this testimony, upon the ground that it was information ob-
tained by the plaintiffs whilst acting as counsel for him, and that it
bore the character of privileged communication, which the plaintiffs
had no right to disclose without his consent.   The Court below re-
fused to strike it out.   Of this ruling the defendant complains, as-
signs it as error, and relies upon it here as the principal ground for
reversing the judgment below.

It is undeniably a general rule of the law of evidence that
an attorney or counselor cannot, without the consent of his client,
be compelled to disclose any fact which may have been com-
municated to him by his client, solely for the purpose of obtaining
his professional assistance or advice ; and section 344 of the Prac-
tice Act of this State explicitly adopts this rule in the following
language : " An attorney or counselor shall not, without the consent
of his client, be examined as a witness to any communication made
by the client to him, or his advice given therein, in the course of
professional employment."

In the complicated affairs and relations of life, the counsel and
assistance of those learned in the law often becomes necessary, and
to obtain it men are frequently forced to make disclosures which
their welfare, and sometimes their lives, make it necessary to be
kept secret.   Hence, for the benefit and protection of the client,
the law places the seal of secrecy upon all communications made to
the attorney in the course of his professional employment, and the

Courts are expressly prohibited from examining him as a witness upon any facts which may have come to his knowledge through the medium of such employment.

But the claims of justice dictate some exceptions to this rule. It would be a manifest injustice to allow the client to take advantage of it to the prejudice of his attorney; or that it should be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights. It is therefore held that in such cases he is exempted from the obligations of secrecy. (*Rochester City Bank* v. *Suydam et al.*, 5 Howard's Pr. R. 254.) In the opinion in that case, Mr. Justice Selden says: " But, independent of this reasoning, and admitting all the previous conclusions to be erroneous, there is still another ground upon which, in my judgment, this motion must be denied. I think that where the attorney or counsel has an interest in the facts communicated to him, and when their disclosure becomes necessary to protect his personal rights, he must of necessity, and in reason, be exempted from the obligations of secrecy. For instance : suppose a client makes a private and confidential statement of facts by letter to an attorney employed to conduct a suit, inducing him to take a particular course with the suit, which proves eminently disastrous, and he is afterward prosecuted by his client for unskillful management of the cause, can it be claimed that he cannot produce the letter in his justification ? I apprehend not."

We think it safe to say that whenever in a suit between the attorney and client the disclosure of privileged communications becomes necessary to the protection of the attorney's own rights, he is released from those obligations of secrecy which the law places upon him. He should not, however, disclose more than is necessary for his own protection. In this case the appellant complains that a large portion of the plaintiff Mitchell's testimony consisted of facts which were communicated to him whilst he was acting as the attorney of the defendant, and the disclosure of which was not necessary for the protection of his own rights. If we agreed with counsel for appellant upon that fact, the judgment below could not, in our opinion, be reversed, for the evidence so improperly admitted is not of a character which could have injured the defendant in this case. That the judgment of an inferior Court will not be set aside on ap-

peal for errors committed on the trial, which, it appears, could not have prejudiced the appellant, is a proposition thoroughly settled by the authorities. The defendant in this case, however, claims that the evidence improperly admitted presented him in a false light before the jury. It disclosed the fact to them that whilst he was in failing circumstances he wished to give his brother a preference over his other creditors, by confessing judgment in his favor. Although many such facts were disclosed by the evidence of Mitchell, we see nothing in it which should have a tendency to so prejudice the jury against the defendant, that they would be influenced by it in their verdict in this case. Taking all the testimony together, we do not see that the defendant endeavored to do anything dishonest or very improper in the confession of the judgment referred to ; and even if he had, it is impossible to believe that it could have influenced the jury in making up their verdict in this case. The plaintiffs are suing for a certain sum of money which they claim to be due them for services rendered for the defendant; how the fact that the defendant was desirous of preferring some of his creditors over others could have induced the jury to give a larger verdict for the plaintiffs, who acted as his attorneys and counselors in the whole matter, than they would otherwise have done, is not easily understood. Indeed, to conclude that they did so would be unnatural and contrary to our understanding of the motives which govern the actions of men. The defendant's disposition towards his creditors could not in any way increase or diminish the value of the plaintiffs' services, and we cannot conclude that the jurors were influenced by any such circumstances without questioning their honesty and good sense. It is evident, therefore, that the defendant was not injured in this case by the admission of the testimony complained of.

This case has been twice tried, the plaintiffs recovering judgment both times ; and we are satisfied that another trial would not, and indeed ought not, to change the result.

Another error complained of by the appellant is that the Court below refused to retax the costs upon a motion for that purpose made by him. What errors in the cost bill the appellant complains of does not appear in the record.

Every item seems regular on the face of the bill. We are therefore unable to determine from the transcript whether the Court be-

low ruled correctly or not, but in the absence of positive error shown we must presume that the ruling was correct. Counsel for appellant mentions the error which they complain of in their brief, but that is not sufficient here. The record must show the error, if any exists. A statement of facts in the brief of counsel will not supply a deficiency in the record. Had it appeared that the one hundred dollar item was improperly charged, we could not hesitate to hold the ruling of the Court below incorrect. But how are we to ascertain whether it is a legitimate charge or not? Most assuredly, only by the record in this case. We cannot go out of that record for facts upon which to determine the conditions of the ruling below, and as we have stated before, that record discloses no error.

The judgment of the District Court is therefore affirmed, and it is so ordered.